**SIGNED this 18th day of November, 2025.**

_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

```
            UNITED STATES BANKRUPTCY COURT
            MIDDLE DISTRICT OF NORTH CAROLINA
                    GREENSBORO DIVISION
```

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| James Lawrence Bryant, Jr., | ) | |
| Sharon Renea Bryant, | ) | Chapter 7 |
| | ) | Case No. 25-10147 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Eastwood Construction Partners, | ) | |
| LLC  dba Eastwood Homes, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 25-02009 |
| | ) | |
| James Lawrence Bryant, Jr., | ) | |
| Sharon Renea Bryant, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This adversary proceeding came before the Court for hearing on October 28, 2025, on the Motion to Dismiss, ECF No. 16, filed by James L. Bryant Jr. and Sharon R. Bryant (collectively "Defendants") and the Brief in Opposition to Defendants' Motion to

1

Dismiss filed by Eastwood Construction Partners, LLC ("Plaintiff").  ECF No. 27 (the "Response").  At the hearing, Counsel for Plaintiff and Defendants appeared.  Defendants are proceeding <u>pro</u> <u>se</u>.  At the conclusion of the hearing, the Court took this matter under advisement.  For the reasons stated herein, the Court will deny Defendants' motion to dismiss.

## JURISDICTION AND AUTHORITY

The district court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b).  Under 28 U.S.C. § 157, the United States District Court for the Middle District of North Carolina has referred this case and these proceedings to this Court by its Local Rule 83.11.  This is a statutorily core proceeding under 28 U.S.C. § 157(b), and the Court has constitutional authority to hear and determine this proceeding by final order.  <u>See</u>, <u>e.g.</u>, <u>In re Dambowsky</u>, 526 B.R. 590, 605 (Bankr. M.D.N.C. 2015); <u>see also</u> ECF No. 17 (consenting to this Court entering final orders).  Venue is proper under 28 U.S.C. § 1409.

## PROCEDURAL BACKGROUND

Plaintiff commenced this adversary proceeding on June 5, 2025, and thereafter timely filed an amended complaint under Federal Rule of Civil Procedure 15(a)(1)(B), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7015.  ECF No. 3 (the "Amended Complaint").  Plaintiff seeks to

have the Court determine that a debt owed to Plaintiff from Defendants is nondischargeable under 11 U.S.C. § 523(a)(6).  Id.

Defendants moved to dismiss the Amended Complaint for failure to state a claim on which relief can be granted, ECF No. 16, and filed Supplemental Exhibits in Support of the motion.  ECF No. 28. The Court has liberally construed[1] the motion, supplemental exhibits, and Defendants' statements on the record in open court. Plaintiff filed a response to the motion on September 22, 2025. ECF No. 27.

### FACTUAL BACKGROUND[2]

On June 25, 2022, Plaintiff and Defendants contracted for the purchase of residential real property in the Cottages at Piper Village ("Piper Village") in Randolph County North Carolina (the "Contract").  ECF No. 3, ¶ 9.  On February 9, 2023, Mr. Bryant entered an Eastwood Homes model home property at Piper Village and

---

[1] The Court must construe filings by pro se litigants liberally.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

[2] The Court has accepted the factual allegations in the Amended Complaint, ECF No. 3, as true for purposes of determining whether the Amended Complaint states a claim under Fed. R. Civ. P. 12(b)(6), except as specifically noted herein, with respect to those facts of which the Court may take judicial notice.  See Fed. R. Civ. P. 12(b)(6).  "[A]court may take judicial notice of its own records."  Watkins v. Wells Fargo Bank, No. CIV.A. 3:10-1004, 2011 WL 777895, at *3 (S.D.W. Va. Feb. 28, 2011); see, e.g., Anderson v. Fed. Deposit Ins. Corp., 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (finding that a district court "should properly take judicial notice of its own records" at the motion to dismiss stage); see also Fed. R. Evid. 201(c).  "[B]oth the Supreme Court of the United States and the Fourth Circuit have found that courts may take judicial notice of items or matters in the public record, even at the 12(b)(6) stage of a proceeding."  Watkins, 2011 WL 777895, at *3; see Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986); Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

complained to Plaintiff's sales agent about certain real covenants and the Homeowners Association of Piper Village. Id. ¶ 13. Plaintiff characterized Mr. Bryant's actions as aggressive and general counsel for Plaintiff, Allen Nason, emailed a Notice of No Trespass to Mr. Bryant stating that Mr. Bryant was no longer authorized to enter onto the Plaintiff's property or approach any of its employees within Piper Village, absent written approval. Id.

Sometime in the middle of April 2023, Defendants placed, and caused others to place, signs on their property, and at other locations, that read "EASTWOOD SLAVE VILLAGE." Id. ¶ 15. Plaintiff further alleged that certain prospective buyers commented on the signage and the negative environment it created. Id. ¶ 16. Mr. Bryant began to approach potential buyers and realtors viewing the available lots at Piper Village, allegedly directing these potential buyers not to purchase homes there. Id. ¶ 17. On April 21, 2023, Mr. Nason contacted Mr. Bryant via email requesting that he remove the signs which he represented to be in violation of the Contract and certain real covenants. Id. ¶ 18. Mr. Nason further demanded that Defendants desist spreading "false and misleading information" about Plaintiff. Id. On or around the same day, a customer of Plaintiff who was under contract to purchase a home in Piper Village visited the neighborhood and observed the signs, including the "EASTWOOD SLAVE VILLAGE" sign,

4

which raised concerns about the neighborhood to this customer.
Id. ¶ 19.  Plaintiff alleges that Mr. Bryant's interaction with
this customer caused her to "pull[] her contract and [that the
customer] did not purchase property in Piper Village."   Id.
Defendants allegedly planned a "Buyer Beware Campaign Rally" that
was scheduled to take place on their front lawn the next day, April
22, 2023.  Id. ¶ 21.  In advance of the rally, Mrs. Bryant made
the following post on TikTok captioned:

> Everything that was suppose [sic] to be done in this
> neighborhood legally is not being done and the builder,
> [Plaintiff] nor the developer, TRENT ADAMS PROPERTIES
> LLC, wants to do anything about it!  This Saturday, at
> 12pm, we will be exposing their tails for the low down,
> dirty businesses that they are!!!  Jim Crow will not
> pitch his . . . .

Id. ¶ 20.  On the day of the rally, on or around 2:48 p.m., Mrs.
Bryant filmed, posted, and broadcasted the event on Facebook as a
live video.  Id.  During the rally, Mr. Bryant brandished a weapon
and remarked that "I got this sign out here in my yard and it says,
'EASTWOOD SLAVE VILLAGE' because I feel like a $400,000 slave.
Bought this nice house right here . . . $400,000 plus.  But they
treating us like slaves out here."  Id. ¶¶ 23, 24.  That same day,
Mrs. Bryant sent an email to various neighbors in Piper Village,
stating: "[i]n closing, we are winning the fight!  One potential
buyer has already cancelled her contract to build and another is
strongly considering the same!  We will continue to fight until
justice is done!"  Id. ¶ 25.  On April 24, 2023, Mr. Bryant

responded to Mr. Nason's email that directed Defendants to remove the "EASTWOOD SLAVE VILLAGE" sign, refusing to remove the sign and asserting that the sign was in fact legal.  Id. ¶ 26.  That same day, Counsel for Plaintiff sent a formal cease and desist letter demanding Defendants halt all conduct directed at threatening or harassing Plaintiff's employees, agents or customers and any other activity intended to harm Plaintiff, its character and good name, its homes and its employees.  Id. ¶ 27.  On April 25, 2023, Mrs. Bryant posted a photograph of the "EASTWOOD SLAVE VILLAGE" sign on Facebook; Mrs. Bryant captioned the image with statements that she believed that Mr. Bryant was being harassed by Plaintiff and their attorneys merely because he spoke out against Plaintiff and their mishandling and mistreatment of homeowners at Piper Village.  Id. ¶ 28.  On April 26, 2023, Mrs. Bryant made a Facebook post advertising a rally planned for April 29, 2023, calling on activists, pastors, evangelists and other leaders in Trinity N.C., to "stand against mistreatment mishandling, abuse of power and prejudice!"  Id. ¶ 29.  The post included images of two signs one reading "WE DESERVE BETTER," and another titled "BUYER'S BEWARE." Id.

On April 27, 2023, Plaintiff filed a complaint along with a motion for temporary restraining order against Defendants for tortious interference with contract, interference with prospective economic advantage, defamation, breach of contract, and unfair and

deceptive trade practices in the North Carolina Court of General Justice (the "State Court"). Id. ¶ 31; see also ECF No. 3, Ex. A (the "State Lawsuit"). On May 19, 2023, Defendants, proceeding pro se, filed an answer and counterclaims, alleging breach of contract, negligence, defamation, and unfair and deceptive trade practices. ECF No. 3, ¶ 32. In the interim, Defendants initiated their own suit in the District Court for the Middle District of North Carolina. See James L. Bryant, Jr. and Sharon R. Bryant v. Plaintiff Construction, LLC d/b/a Plaintiff Homes, 1:23 cv 637 (the "Federal Lawsuit"); ECF No. 3, ¶ 34. Plaintiff filed a Motion to Dismiss Defendants' counterclaims in the State Lawsuit, and on November 22, 2023, the State Court granted Plaintiff's Motion and dismissed Defendants' counterclaims for negligence, defamation, and unfair and deceptive trade practices with prejudice leaving only Defendants' breach of contract counterclaim. ECF No. 3, ¶ 33.

On December 28 and 29, 2023, Plaintiff and Defendants entered and signed a Settlement Agreement intended to resolve both State and Federal Lawsuits. Id. ¶¶ 35, 36. The Settlement Agreement included a "Release by Eastwood" and a "No Admission of Liability" clause. ECF No. 28, at 33-36.[3] Under the terms of that agreement,

---

[3] The "Release by Eastwood," Clause reads as follows:

> Other than with respect to any rights it may have under this Agreement, [Plaintiff], for itself, and for its respective

7

Defendants executed a Confession of Judgment, in the amount of
$150,000.00, to remain confidential and in the care of Plaintiff
in the absence of a default by Defendants under the Settlement
Agreement and agreed to dismiss their counterclaims against
Plaintiff in the State Lawsuit as well as the Federal Lawsuit; in
return, Plaintiff paid Defendants $7,500.00.  Id. ¶ 39; ECF No.
28, at 31.

On December 29, 2023, after receiving Plaintiff's payment,
Defendants filed a notice of voluntary dismissal of their remaining
counterclaim for breach of contract in the State Lawsuit, id. ¶

---

trustees, insurers, agents, assigns, servants, employees, officers,
directors, members, representatives, . . . does hereby relinquish,
remise, release, and forever discharge the Defendants and their
respective representatives, trustees, assigns, heirs, and all other
persons, parties or corporations . . . from all liabilities, costs
claims, demands, damages, losses, causes of action and suits which
[Plaintiff] may now have or claim to have, or might hereafter have
or claim to have, whether same is known or not known at this time,
from the beginning of time to the date of the execution of this
Agreement arising out of or related to the allegations that were or
could have been set forth in the Lawsuits, such that all claims
that are or might be in controversy among the Parties in or related
to the Lawsuits are forever put to rest, it being the clear
intention of the Parties to forever discharge and release all past,
present and future claims against one another for any and all acts
or omissions alleged in the Lawsuits or that could have been alleged
in the Lawsuits and all consequences or claims potentially resulting
therefrom.  ECF No. 28, at 33 (the "Eastwood Release").

The "No Admission of Liability" Clause reads as follows:

Each Party understands and agrees that this Agreement is a
compromise and settlement of disputed claims, disputed accounting
records and interpretations, and disputed debt; that the provision
and acceptance of any benefits pursuant to this Agreement is
intended merely to avoid future cost of litigation among the
Parties.  No provision of this Agreement shall be considered as
admissions by any Party of any liability or wrongdoing.  ECF No.
28, at 35-36 (the "No Admission of Liability Clause").

36, but did not dismiss the Federal lawsuit. Id. ¶ 41. Thus, Plaintiff did not dismiss the State Lawsuit, and Plaintiff moved to enforce the Settlement Agreement, asking the State Court: (1) to order Defendants to dismiss the Federal Lawsuit; (2) to award costs and fees to Plaintiff; and (3) to permit Plaintiff to file the Confession of Judgment. Id. ¶ 42. The State Court granted Plaintiff's motion and ordered Defendants to dismiss the Federal Lawsuit, pay $12,465.00 in attorneys' fees and $116.48 in costs to Plaintiff. Id. ¶ 43; ECF No. 3, Ex. B. The State Court also directed Plaintiff to file the Confession of Judgment, and Plaintiff thereafter did so. ECF No. 3, Ex. C. Almost a year after the filing of the Confession of Judgment, Defendants filed a voluntary petition under chapter 7 of title 11 on March 13, 2025.

In this proceeding, Plaintiff alleges that Defendants deliberately, intentionally, and wrongfully interfered with Plaintiff's business by initiating a malicious and unlawful smear campaign and harassing its owners, employees, and customers with no purpose other than to damage Plaintiff's business and reputation. ECF No. 3, ¶ 46. Plaintiff contends that the debt represented by the Confession of Judgment is non-dischargeable under 11 U.S.C. § 523(a)(6).

Defendants argue that this adversary proceeding should be dismissed because: (1) the general release clause in the parties' Settlement Agreement prohibits the adversary proceeding; (2) the

Settlement Agreement's no admission of liability clause demonstrates the intent to fully resolve the dispute and prohibits the adversary proceeding; (3) res judicata, collateral estoppel, and judicial estoppel prevent the dischargeability claim from being relitigated by this Court because the Settlement Agreement was ruled enforceable by the State Court; (4) the Confession of Judgement underlying Plaintiff's debt is a nullity because certain property ("Specified Property"), which was allegedly not sold on account of Defendants' interference, later was sold in September 2024 for $495,000.00, thereby fully mitigating Plaintiff's damages; and (5) the Amended Complaint fails to state a claim upon which relief can be granted.  ECF No. 16; ECF No. 30.

## STANDARD OF REVIEW

Civil Procedure Rule 12(b)(6), made applicable to this proceeding by Bankruptcy Rule 7012, requires dismissal of all or part of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. A complaint will survive a motion to dismiss if it states, "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"[A] plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss" but is

simply required to make allegations sufficient "enough to raise a right to relief above the speculative level." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012) (citing Twombly, 550 U.S. at 555). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" do not constitute well-plead facts and are therefore disregarded. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Ordinarily the merits of an affirmative defense are not determined at the Rule 12(b)(6) stage.

> But in the relatively rare circumstances where facts
> sufficient to rule on an affirmative defense are alleged
> in the complaint, the defense may be reached by a motion
> to dismiss filed under Rule 12(b)(6). This principle
> only applies, however, if all facts necessary to the
> affirmative defense "clearly appear[] on the face of the
> complaint."

Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (emphasis omitted) (quoting Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

## DISCUSSION

## I.  Neither the Settlement Agreement, nor the Eastwood Release preclude Plaintiff's claims in this adversary proceeding.

Defendants argue that the Settlement Agreement, coupled with the broad language of the Eastwood Release, completely addresses and releases all claims, including the nondischargeability action brought by Plaintiff. ECF No. 28, at 33-36; ECF No. 30, at

11

00:04:00-00:05:15.   In other words, the debt owed was not the result of "willful and malicious injury," it was merely the result of a breach of the contractual settlement arrangement, using the broadest possible language to release one another from "all past, present and future claims . . . for any and all acts or omissions alleged in the Lawsuit or that could have been alleged in the Lawsuits and all consequences or claims potentially resulting therefrom." Id. Defendants further contend that the Settlement Agreement and its full release and no admission of liability clauses preclude the dischargeability claim raised in this adversary proceeding.

Neither the Settlement Agreement, nor the release therein, bars further inquiry into the underlying debt for purposes of dischargeability. See Archer v. Warner, 538 U.S. 314, 321 (2003). In Archer, the United States Supreme Court addressed whether § 523(a)(2)(A), which bars the discharge of a debt in bankruptcy "to the extent" it is "for money . . . obtained by . . . false pretenses, a false representation, or actual fraud," applies when a fraud claim is settled and memorialized in a settlement agreement containing a full release.   The Archer case arose out of this Court.  No. 96-10373C-7G; A.P. 97-2003, ECF No. 92.  Although this Court recognized a split among the cases on this issue, id. at 6-7, this Court agreed with virtually identical arguments to those raised by Defendants in this case.   Finding that it was

"significant" that the broad language of the release in the settlement agreement included claims "which the plaintiffs 'might otherwise hereafter have' against the defendants," id. at 9, "th[is] [C]ourt conclude[d] that the plaintiffs effectively released and extinguished the dischargeability claim which they now seek to assert . . . ."  Id. at 10.  This Court therefore dismissed the dischargeability action.  Both the district court, No. 1:99CV00924 (M.D.N.C. Sept. 27, 2000), and the United States Court of Appeals for the Fourth Circuit affirmed.  283 F.3d 230 (4th Cir. 2002).

The Supreme Court reversed, holding that a bankruptcy court is not limited to the four corners of the settlement agreement to determine dischargeability despite an included broad release. Instead, Congress intended the dischargeability determination to take place in the bankruptcy court, "not to force it to occur earlier in state court at a time when nondischargeability concerns 'are not directly in issue and neither party has a full incentive to litigate them."  538 U.S. at 321 (quoting Brown v. Felsen, 442 U.S. 127, 134 (1979)).  This is because a pre-suit settlement resolving a non-dischargeable claim arises no less out of the underlying tort than a debt memorialized in a post suit settlement; what matters is the "true nature" of the underlying debt.  Id. (citing Brown, 442 U.S. at 138.

More recently the Fourth Circuit considered the effect of Archer on debts "arising from" willful and malicious injuries and extended the Supreme Court's holding to cover putative claims under this additional exception to discharge.  See In re Hilgartner, 91 F.4th 186 (4th Cir. 2024).  In Hilgartner, the Court held that for purposes of § 523(a)(6), even if a potentially non-dischargeable debt for "willful and malicious injury may have been reduced to a settlement agreement . . . that does not change the nature of the debt for dischargeability purposes."  Id. at 192 (citation modified).

Archer and Hilgartner resolve the question presented in this case and this Court is bound by those decisions.  As in this case, the broad language in the settlement agreement in Archer that purportedly released any claims which the parties "might otherwise hereafter have" against the defendant did not prevent the Court from later determining whether the debt should be excepted from discharge.  Archer, 538 U.S. at 317.  The same is true here. Although the Eastwood Release may be broad, its breadth does not limit the ability of the Court to consider whether the debt embodied in the Settlement Agreement, and underlying Confession of Judgment is for willful and malicious injury under § 523(a)(6).

**II.  The No Admission of Liability Clause does not preclude this litigation and fails for the same reason as the General Release.**

Defendants argue that the No Admission of Liability Clause "automatically renders [Plaintiff's] claim for willful and malicious injury void," because it represents the parties' intention to fully resolve their dispute.  ECF No. 30, at 00:20:40-00:21:12.  To the extent that this argument was intended to provide another avenue to dispute the Court's ability to evaluate the nature of the underlying alleged tort, i.e., – that the debt owed was not the result of "willful and malicious injury," it was merely the result of a breach of the contractual arrangement to which both parties agreed – this argument fails for the same reasons as the release provision.  This Court is not prohibited from considering the nature of the underlying debt.  It is the purview of the Court to determine whether the debt embodied in the Settlement Agreement, and underlying Confession of Judgment is for willful and malicious injury under § 523(a)(6).[4]

**III.  The Plaintiff's action is not barred by Res Judicata, Collateral Estoppel, or Judicial Estoppel.**

Defendants assert that a dischargeability claim for willful and malicious injury cannot be raised in this adversary proceeding

---

[4] In any event, the No Admission of Liability Clause is merely that—a provision that prohibited the Settlement Agreement itself from constituting an admission of liability by either party for the underlying resolved claims.  It was not a determination that no liability existed.

15

because such a claim is barred by res judicata, collateral estoppel, or judicial estoppel. ECF No. 30, at 00:04:00-00:05:15. Defendants argue that these doctrines prevent the litigation of dischargeability which could have been litigated in state court. While the Supreme Court has concluded that principles of res judicata and collateral estoppel apply in dischargeability proceedings in bankruptcy, see Grogan v. Garner, 498 U.S. 279, 284 (1991) (finding that a bankruptcy court may use a prior decision by another court as the basis for a finding of nondischargeability of debt so long as the standard of proof in the prior case was by a preponderance of the evidence or higher), these principles do not preclude the litigation to determine dischargeability of the affected debt, as explained by Brown, Archer, and Hilgartner. The dischargeability claim could not have been litigated in the state court. It is a federal cause of action that arises in bankruptcy and therefore did not exist prior to Defendants' chapter 7 case. 11 U.S.C. § 523(a)(6); see also In re Hight, No. 94-12323C-7D, 2001 WL 1699694, at *1 (Bankr. M.D.N.C. Feb. 26, 2001) (noting that the effect of § 523(c) "is that the bankruptcy court has exclusive jurisdiction to determine the dischargeability of . . . debts for willful and malicious injury or damage by the debtor [§ 523(a)(6)]"); In re McDonald, No. 13-10663, 2014 WL 6839451, at *2 (Bankr. M.D.N.C. Dec. 3, 2014) (holding that a dischargeability defendant's reliance on res judicata and full faith and credit was

16

misplaced "[b]ecause nondischargeability of a debt is an entirely separate determination with its own elements under § 523 which require more than the establishment of liability, principles of <u>res judicata</u> do not apply (i.e., no determination of dischargeability was made") (quoting <u>In re Berr</u>, 172 B.R. 299, 305 n.4 (B.A.P. 9th Cir. 1994)). Therefore, although the existence of the debt is not a claim that can be re-adjudicated by this Court, <u>see</u> <u>In re Heckert</u>, 272 F.3d 253, 259-60 (4th Cir. 2001), the issue of dischargeability remains and must be litigated. That claim could not have been litigated in the State Lawsuit. As with settlement agreements, the bankruptcy court is permitted to determine the dischargeability of a debt represented by a prepetition state court judgment. <u>See, e.g., Brown</u>, 442 U.S. at 128; <u>Heckert</u>, 272 F.3d at 257 ("when a prior state court judgment is the debt at issue, . . . [a]ll the bankruptcy court is called upon, or authorized to do, is to determine whether or not the state judgment is dischargeable").

### IV. This Court may not relitigate the amount established in the State Court.

Next, Defendants seek a determination that the underlying Confession of Judgment lacks merit because certain Specified Property, which was allegedly not sold on account of the Defendants' interference, was sold in September 2024 for $495,000.00, and therefore the damages underlying the Confession

17

of Judgment should be disregarded.  ECF No. 16.  Thus, the issue
Defendants next raise is whether this Court is required to give
full faith and credit to the state determination as to the amount
of the debt.

The amount of the claim is res judicata as to the debt in
controversy.  Heckert, 272 F.3d at 257-58 (holding that the
bankruptcy court may not enter its own monetary judgment where the
state court has done so prior to the bankruptcy; the bankruptcy
court is bound by res judicata as a matter of full faith and credit
with respect to the amount and validity of the debt).  State court
judgments receive the full faith and credit promised by the
Constitution and therefore preclude relitigating the judgment in
federal court under Constitution, art. IV, § 1 and 28 U.S.C. §
1738, safeguards of efficiency and finality of litigation.  See In
re Adams, 151 F.4th 144, 152 (3d Cir. 2025) (as to the
constitutional protection).  To assess the extent of preclusion,
federal courts "apply the [judgment] state's law of collateral
estoppel."  See In re Caswell, 605 B.R. 401, 410-11 (Bankr.
M.D.N.C. 2019) (citation modified).  N.C. Rule 68.1(e) provides
that a valid confession of judgment has the same effect as other
judgments and therefore may be enforced in the same manner.  N.C.
Gen. Stat. § 1A-1, R. 68.1(e).  However, no judgment of confession
shall be held to be issue preclusive as to any fact in any civil
action except in an action on the judgement to confess.  Id.

Although a confession of judgment is not determinative of any particular fact in a subsequent action, it is preclusive with respect to the liability on the claim.  See Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 428 (1986).  In other words, while factual issues may be disputed, the amount of a judgment, as a matter of law, is precluded from relitigation by the existence of a valid confession of judgment.  Cf. Sartin v. Macik, 535 F.3d 284 (4th Cir. 2008) (explaining that default judgments do not have collateral estoppel effect under North Carolina law, but do possess res judicata effect); and Heckert, 272 F.3d, at 257 ("bankruptcy court's entry of its own money judgment to replace the state court judgment is barred by res judicata . . . as a matter of full faith and credit, under 28 U.S.C. § 1738").

Here, Defendants attempt to challenge the amount of the debt owed to Plaintiff, but the establishment of the debt by the Confession of Judgment must be accorded full faith and Credit under N.C. Gen. Stat. § 1A-1, R. 68.1(e) and 28 U.S.C. § 1738. Defendants' argument is specifically precluded, and they cannot re-litigate the amount of the debt in this Court.

The inquiry nevertheless does not end there, even if the Confession of Judgment must be afforded full faith and credit, it is the responsibility of this Court to determine whether Defendants' actions were willful and malicious as contemplated under federal law and whether and to what extent the damages were

19

caused by the willful and malicious injury as contemplated by 11 U.S.C. § 523(a)(6).

**V.    Plaintiff states a plausible claim under § 523(a)(6).**

The Amended Complaint contains sufficient allegations, taken as true and construed in a light most favorable to Plaintiff as the non-moving party, to state a plausible claim for willful and malicious injury as contemplated by § 523(a)(6).  Section 523(a)(6) excepts from discharge debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  The party raising a § 523(a)(6) challenge must show "(1) the debtor caused an injury; (2) the debtor's actions were willful; and (3) that the debtor's actions were malicious."  In re Wooten, 423 B.R. 108, 128 (Bankr. E.D. Va. 2010) (quoting In re Sparrow, 306 B.R. 812, 834 (Bankr. E.D. Va. 2003)) (internal quotation marks omitted); see also Choi v. Hyon, No. 22-2240, 2023 WL 7381547, at *1 (4th Cir. Nov. 8, 2023).

Section 523(a)(6) applies only to "acts done with the actual intent to cause injury."  In re Duncan, 448 F.3d 725, 729 (4th Cir. 2006) (citation modified).  "Debt arising from an injury attributable to mere negligent or reckless conduct fails to satisfy the 'willful and malicious requirement of (a)(6),'" as they do not satisfy the necessary scienter requirement.  In re Holmes, 610 B.R. 541, 548 (Bankr. D.S.C. Jan. 7, 2020) (quoting In re Muhs,

20

923 F.3d 377, 385 (4th Cir. 2019)). "[T]he mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6)." In re Duncan, 448 F.3d 725, 729 (4th Cir. 2006). "[T]o qualify as willful for purposes of section 523(a)(6), the debtor must: 1) commit an intentional tort, not a negligent or reckless tort, and 2) the intentional tort must be conduct substantially certain to result in injury or be motivated by a desire to inflict injury." In re Eppard, 502 B.R. 458, 464 (Bankr. W.D. Va. 2012).

Plaintiff must also plausibly allege malice. The Fourth Circuit has explained that malice, rather than requiring the defendant to act with subjective ill will, may be "shown by the acts and conduct of the debtor in the context of their surrounding circumstances . . . ." In re McNallen, 62 F.3d 619, 625 (4th Cir. 1995). Furthermore, "it is the debtor's subjective state of mind that is relevant," and malice can be found implicitly through the "acts and conduct of the debtor in the context of [the] surrounding circumstances." In re Stanley, 66 F.3d 664, 668 (4th Cir. 1995) (citations omitted) (alteration in original).

### a. Plaintiff has sufficiently alleged that the injury was willful.

Construed in the light most favorable to Plaintiff, the Amended Complaint sufficiently pleads willful injury.[5]  Plaintiff alleges specific actions that Defendants took with intent to cause harm and "to damage Plaintiff's business and reputation."  ECF No. 3, ¶ 44.  Plaintiff alleged that Defendants' campaign relied upon making, and, importantly, publishing defamatory statements about Plaintiff on signs posted in front of their house, id. ¶ 15, on social media posts, id. ¶¶ 20, 28-29, at a rally, id. ¶¶ 23-24, and critically, to customers and potential customers visiting the neighborhood with their realtors.  Id. ¶ 19.  Plaintiff argues that Defendants' statements were intended to: (1) associate Plaintiff with discriminatory and racist conduct; (2) falsely accuse Plaintiff of violating laws; (3) falsely accuse Plaintiff of mistreating homeowners; (4) falsely accuse Plaintiff of harassing Defendants; and (5) blame Plaintiff for issues in the neighborhood not within Plaintiff's control.  ECF No. 27, at 8. These allegations, taken as true, are more than mere recitations of the elements of a cause of action.  Taken in a light most favorable to Plaintiff, these actions indicate Defendants' intent

---

[5] As discussed above the underlying confession of judgment holds preclusive effect to matters of law, not questions of fact, and so the Court will not analyze whether the causes of action underlying the confession of judgment themselves state a claim under § 523(a)(6).

to interfere with Plaintiff's business.   Plaintiff also alleges
that those statements directly resulted in the loss of at least
one sale, where an individual allegedly "pulled her contract" on
account of Defendants.  ECF No. 3, ¶ 19.  Moreover, in Ms. Bryant's
April 22, 2023, email, she explicitly stated that "we are winning
the fight!  One potential buyer has already cancelled her contract
to build and another is strongly considering the same!"  Id. ¶ 24.
These specific allegations are sufficient to plausibly allege that
Defendants took each of these acts to harm Plaintiff rather than
merely   acting   intentionally   and   incidentally   harming
Plaintiff.[6]  Despite Defendants' assertion that no facts alleged
support a finding of Defendants' intent to injure Plaintiff,
Defendants' Confession of Judgment states that Defendants'
campaign directed against Plaintiff was intended to damage
Plaintiff's business.   ECF No. 3, ¶ 44; id. at 20.[7]   These
allegations taken as true arise to more than a mere probability
that Plaintiff's injury was intentional and survives Defendants'
12(b)(6) Motion.

---

[6] At the hearing, Mrs. Bryant spoke passionately as to her true intent.  ECF
No. 30, at 00:47:20-00:53:25.  At this stage of the process, however, the Court
must construe the facts in a light most favorable to the Plaintiff and cannot
make factual determinations.  It is rare that intent can be determined as a
matter of law at the pleading stage.  Carefirst of Maryland, Inc. v. Johnson &
Johnson, 745 F. Supp. 3d 288, 311 (E.D. Va. 2024) (explaining that it is rare
to have direct evidence of deceptive intent at the pleading stage).

[7] Nothing herein shall be construed to accept the statements in the Confession
of Judgment as determinative in this proceeding or entitled to preclusive
effect.

**b. Plaintiff has sufficiently alleged malice.**

The Amended Complaint sufficiently alleges facts to support that Defendants acted with malice.  A debtor's injurious act done "deliberately and intentionally in knowing disregard of the rights of another," is sufficiently willful and malicious, to prevent discharge of a debt.  Stanley, 66 F.3d at 667 (citation modified). A debtor's state of mind may be relevant for the second half of the inquiry but, malice is typically inferred through a debtor's acts and conduct in the context of the surrounding circumstances. Id. at 667-68.  Defendants argue that the alleged conduct was not sufficiently malicious, and instead that Defendants' actions were intended only to "voice concerns about the deplorable neighborhood conditions and poor-quality housing issues."  ECF No. 16, at 2. Defendants allege that their conduct was instead intended to "bring awareness to their concerns."  Id.  In other words, that Defendants had just cause to take the actions alleged.

Citing In re Adams, 478 B.R. 476, 485 (Bankr. N.D. Ga. 2012), Plaintiff contends that the sum total of Defendants' alleged actions demonstrates malice.  ECF No. 27, at 9.  In Adams, albeit in the context of § 1328(a)(4),[8] the Court determined the volume

---

[8] "Malicious" for purposes of § 1328(a)(4) means "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" In re Jennings, 670 F.3d 1329, 1334 (11th Cir. 2012) (quoting In re Walker, 48 F.3d 1161, 1164 (11th Cir. 1995)).  To establish malice, "a showing of specific intent to harm another is not necessary."  In re Ikner, 883 F.2d 986, 991 (11th Cir. 1989).

and severity of the defendant's conduct supported an inference of malice.  <u>Adams</u>, 478 B.R. at 485.  There, the defendant repeatedly contacted the plaintiff's coworkers falsely accusing the plaintiff of abusive behavior and financial fraud, threatened to kill the plaintiff, and made false reports that resulted in the successful sabotage of a business deal between the parties by defaming the defendant.  <u>Id.</u> at 481.  Defendants' actions as alleged in the Amended Complaint evidence a similar persistence, and Plaintiff sufficiently alleges that the false statements, and incendiary actions made by Defendants were intended to cause Plaintiff to lose revenue.  ECF No. 3, ¶¶ 18-24.  Although Defendants may have intended their actions to merely "bring awareness to their concerns," ECF No. 16, at 2, to meet the plausibility standard, Plaintiff is not required "to also rebut other possible explanations for the conduct alleged."  2 Moore's Federal Practice § 12.34(1)(b) (2019); <u>see</u> <u>also</u> <u>Stanley</u>, 66 F.3d at 668 (explaining that the focus of the inquiry is whether or not the debtor intended the consequences of their actions, not whether their intentions in acting unlawfully were good).  Taken in a light most favorable to the non-moving party, the Amended Complaint sufficiently alleges that Defendants engaged in a pattern of intentional interference with Plaintiff's business and these allegations support a plausible showing of malice under § 523(a)(6).

Thus, Plaintiff has successfully stated a claim that Defendants' actions constitute a willful and malicious injury under § 523(a)(6) and the Court will deny the Motion to Dismiss.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, and DECREED** that the Motion to Dismiss is denied.

[END OF DOCUMENT]

<u>Parties to be Served</u>
25-02009

James Lawrence Bryant, Jr.
5629 Siler Str
Trinity, NC 27370

Sharon Renea Bryant
5629 Siler Str
Trinity, NC 27370

John Paul Hughes Cournoyer
U.S. Bankruptcy Administrator                    VIA CM/ECF

Jamey M. Lowdermilk
Katarina Kyung Oak Wong                          VIA CM/ECF
Counsel for Plaintiff